1  ROBERT R. RONNE, ESQ. (SBN 092884)
   LAW OFFICE OF ROBERT R. RONNE, APC
2  840 Apollo Street, Suite 307
   El Segundo, California 90245
3  Telephone: (310) 322-1696          NOTE: CHANGES MADE BY
   Facsimile: (310) 322-3039          THE COURT
4  E-mail: rrr55@sbcglobal.net

5  DENNIS W. RIHN, ESQ. (SBN 126233)
   ATTORNEY AT LAW
6  3460 Ocean View Boulevard, Suite F
   Glendale, California 91208
7  Telephone: (818) 265-0525
   Facsimile: (818) 249-2788
8  E-mail: D.Rihn@att.net

9  Attorneys for Plaintiff Mario Ferrer

10

11                   UNITED STATES DISTRICT COURT

12                  CENTRAL DISTRICT OF CALIFORNIA

13

14  MARIO FERRER,                )  CASE NO:  CV 09-00308 VBF (VBKx)
                                 )
15              Plaintiff,       )  REVISED FINDINGS OF FACT AND
                                 )  CONCLUSIONS OF LAW (RULE 52,
16         vs.                   )  FEDERAL RULES OF CIVIL
                                 )  PROCEDURE)
17  SPRING HOUSE CARE, INC., a   )
    business entity; ZAREEN FAIZ, an )  COURTROOM: 9
18  individual, and DOES 1 through )
    100, inclusive,              )
19                               )  JUDGE: THE HONORABLE VALERIE
                Defendants.      )  BAKER FAIRBANK
20  _____)

21

22

23

24

25

26

27

28

All parties having waived trial by jury, a bench trial was conducted on October 20, 2009, and October 21, 2009, before the Honorable Valerie Baker Fairbank, United States District Judge Presiding.  Witnesses were sworn and testified, and documents were admitted into evidence.  Based upon the testimony of the witnesses, the exhibits received in evidence, and as set forth in its oral statement of decision on October 14, 2009, this Court concludes and finds as follows:

I.     **PROPOSED FINDINGS OF FACT**

     A.     **Factual Findings Pertinent to Interstate Commerce**

          1.     At all times relevant to this action, Defendant Zareen Faiz was engaged in the operation of a residential care facility for mentally disabled persons.  (See Exhibits 19, 20, 28 & 32; Trial testimony of Defendant Zareen Faiz, Plaintiff Mario Ferrer and Lolita Fernando.)

          2.     Plaintiff was employed as a caregiver at a residential care facility for mentally disabled persons operated by Defendant Zareen Faiz and, in this action, seeks wages for work performed at such facility.  (See Exhibits 19, 20, 28 & 32; Trial testimony of Defendant Zareen Faiz, Plaintiff Mario Ferrer and Lolita Fernando.)

     B.     **Factual Findings Pertinent to Hours Worked, Wages Earned and Wages Paid**

          3.     Effective April 23, 1999, Zareen Faiz personally was licensed by the California Department of Social Services to operate a residential care facility for developmentally disabled persons located at 3205 Ruth Place, Orange CA 92869 (hereinafter "the Ruth Place facility").  (Exhibits 28 & 32; Trial testimony of Defendant Zareen Faiz.)

          4.     On June 1, 1999, Defendant Zareen Faiz submitted to the Regional

Center of Orange County a vendor application, the purpose of which was to allow the Ruth Place facility to receive developmentally disabled clients from regional centers throughout the State of California.  (Exhibit 29; Trial testimony of Defendant Zareen Faiz.)

5.   On June 22, 1999, Defendant Zareen Faiz became an approved vendor eligible to receive developmentally disabled residents from regional centers located in the State of California.  (Exhibit 30.)

6.   The developmentally disabled residents who reside at the Ruth Place facility suffer from mental retardation.  (See Exhibit 20, page 4; Trial testimony of Defendant Zareen Faiz.)

7.   The Ruth Place facility's operational hours are 24 hours per day, 7 days per week.  (See Exhibits 19, 20, 26.)  The Court rejects as not credible Defendant's trial testimony regarding the facility's operational hours.  Such trial testimony, without explanation or excuse, contradicted Defendant's  prior deposition testimony.  (Faiz deposition, page 88, lines 14-18.)

8.   The Ruth Place facility is required to have an authorized person continuously present at the Ruth Place facility during operational hours.  (See Exhibits 26 & 49.)  The Court rejects as not credible Defendant Zareen Faiz's trial testimony that the facility was not required to have an authorized person continuously present at the facility because such testimony (without explanation) contradicted Defendant's previous deposition testimony.  (Faiz deposition, page 89, line 22 through page 90, line 1.)

9.   Defendant Zareen Faiz was, at all times relevant to this action, contractually bound by an agreement with the Regional Center of Orange County to provide staff coverage, to pay wages for staff

[Proposed} Findings of Fact and Conclusions of Law

coverage, and to retain documents proving payment of wages for staff coverage at the Ruth Place facility for all 168 hours of each week.  (See Exhibits 20, 29, 38, 39, 40, 43 & 44; Trial testimony of Defendant Zareen Faiz.)

10.   Dr. Faiz's agreement with the Regional Center of Orange County included the requirement that a caregiver be present, and compensated for being present, at the Ruth Place facility from 10:00 p.m. to 6:00 a.m. each day.  (Exhibits 20, 29, 38, 39, 40, 43 & 44; Faiz Deposition, page 28, lines 3-14; page 34, lines 18-20; and page 41, lines 10-17.)  The Court rejects as not credible Defendant's trial testimony that a caregiver was not required to remain present at the facility between 10:00 p.m. and 6:00 a.m. Defendant's trial testimony in that regard contradicted her previous deposition testimony.

11.   The developmentally disabled residents who reside at the Ruth Place facility need assistance with activities of daily living.  (Trial testimony of Defendant Zareen Faiz.)

12.   The primary duty of a caregiver at a residential care facility for developmentally disabled persons is to monitor the disabled residents, including during the night.  (Trial testimony of Lolita Fernando.)

13.   Defendant Zareen Faiz was never a caregiver at the Ruth Place facility.  (Trial testimony of Defendant Zareen Faiz.)

14.   In March of 2006, Lolita Fernando, the administrator of the Ruth Place facility, hired Plaintiff Mario Ferrer and trained him to be a caregiver at the Ruth Place facility.  (Trial testimony of Plaintiff Mario Ferrer and Lolita Fernando.)

15.   Lolita Fernando instructed Plaintiff Mario Ferrer that he was

required to live at the Ruth Place facility, to take care of the developmentally disabled residents, and not to leave them unattended at any time unless he was relieved of his duties by another caregiver.  (Trial testimony of Lolita Fernando.)

16.  Between March 27, 2006, and March 31, 2006, Plaintiff Mario Ferrer attended at least 14 hours of training classes.  (See Exhibit 51; Trial testimony of Plaintiff Mario Ferrer.)

17.  On March 30, 2006, in a document submitted to the California Department of Social Services, Plaintiff Mario Ferrer was designated as the person to whom the licensee had delegated the responsibility to perform the licensee's duty "to have an authorized person continuously present at the facility during operational hours to represent the facility and to accept licensing reports."  (See Exhibit 49.)

18.  Before April 3, 2006, Plaintiff was instructed that he would be on-duty and responsible for the care of the developmentally disabled residents of the Ruth Place facility from 6:00 p.m. on Sunday until 6:00 p.m. on Friday each week, but that he could leave the facility between 9:00 a.m. and 2:00 p.m. if all the disabled residents were away from the facility attending a day program.  (Testimony of Lolita Fernando and Plaintiff Mario Ferrer.)

19.  Between at least April 3, 2006, and July 25, 2008, Plaintiff Mario Ferrer worked as a caregiver at the Ruth Place facility.  (Exhibit 66; Trial testimony of Defendant Zareen Faiz, Plaintiff Mario Ferrer, and Lolita Fernando.)

20.  Between at least April 3, 2006, and July 25, 2008, between 4 and 6 developmentally disabled persons resided at the Ruth Place facility.  (See Exhibit 70.)

[Proposed} Findings of Fact and Conclusions of Law

21.   Between April 3, 2006, and July 25, 2008, as instructed, Plaintiff Mario Ferrer remained continuously on duty at the Ruth Place facility each week between 6:00 p.m. on Sunday until 6:00 p.m. on Friday with the only exception that he was relieved of his duties between 9:00 a.m. and 2:00 p.m. if all disabled residents were attending a day program.  (Testimony of Lolita Fernando and Plaintiff Mario Ferrer.)

22.   In addition, there were occasions when Plaintiff Mario Ferrer was on duty at the Ruth Place facility between Friday at 6:00 p.m. and Sunday at 6:00 p.m. because no caregiver was provided to relieve him.  (Testimony of Mario Ferrer, and corroborated by testimony of Lolita Fernando.)

23.   The time records admitted into evidence as Exhibit 66 were contemporaneously prepared by Plaintiff Mario Ferrer and accurately reflect both (a) the time periods between 9:00 a.m. and 2:00 p.m. when not all developmentally disabled residents attended a day program and thus plaintiff remained on duty caring for disabled residents, and (b) the time periods between 6:00 p.m. on Friday and 6:00 p.m. on Sunday when Plaintiff was not relieved of his duties by another caregiver and therefore remained on duty caring for disabled residents.  (Exhibit 66; Testimony of Plaintiff Mario Ferrer and corroborated by Lolita Fernando.)

24.   During his employment at the Ruth Place facility, Plaintiff was not allowed to circulate literature of any nature, including political and religious literature, at the Ruth Place facility without the approval of the administrator.  (Exhibit 22.)

25.   During his employment at the Ruth Place facility, Plaintiff Mario Ferrer was not allowed to solicit, sell tickets, or collect money at

1       the Ruth Place facility without the administrator's approval.

2       (Exhibit 22.)

3   26.   During his employment at the Ruth Place facility, Plaintiff Mario

4       Ferrer was not allowed to discuss personal problems with disabled

5       residents or their relatives.  (Exhibit 22.)

6   27.   During his employment at the Ruth Place facility, Plaintiff Mario

7       Ferrer was not allowed to leave the developmentally disabled

8       residents unsupervised at any time.  (Exhibit 22.)

9   28.   During his employment at the Ruth Place facility, Plaintiff was not

10      allowed to drink alcoholic beverages at the facility.  (Exhibit 22.)

11  29.   Defendant retained the authority to exclude Plaintiff immediately

12      from the facility.  (Testimony of Defendant Zareen Faiz.)

13  30.   During his employment at the Ruth Place facility, Plaintiff was

14      paid a salary of $1200.00 per month.  (Exhibit 67; Testimony of

15      Plaintiff Mario Ferrer.)

16  31.   Plaintiff was never paid on an hourly basis and the salary payments

17      Plaintiff received were never allocated to any particular hour of the

18      day or duty performed.  (See Exhibit 67.)

19  32.    Defendant Zareen Faiz and Plaintiff Mario Ferrer never entered

20      into any agreement providing that Plaintiff would not be paid for

21      sleep time.  (Exhibit 67; Testimony of Plaintiff Mario Ferrer.)  The

22      Court rejects as not credible the testimony of Defendant Zareen

23      Faiz that Plaintiff was shown Exhibits 107, 109 and 110.  Instead,

24      the Court accepts as credible and true Plaintiff Mario Ferrer's

25      testimony that he never saw Exhibits 107, 109, and 110 until the

26      time of trial in this action.

27  33.   Plaintiff Mario Ferrer resided at the employment premises

28      primarily for the benefit of Defendant.  (Inference adduced from

-7-

Exhibits 20, 29, 38, 39, 40, 43, 44 & 70; Trial testimony of Plaintiff Mario Ferrer and Lolita Fernando.)

34.   Between April 3, 2006, and July 25, 2008, Defendant Zareen Faiz submitted monthly billing invoices, verified under penalty of perjury, to the Regional Center of Orange County for services provided at the Ruth Place facility.  (See Exhibit 70.)

35.   Between April 3, 2006, and July 25, 2008, when she submitted monthly billing statements to the Regional Center of Orange County in connection with the Ruth Place facility, Defendant Zareen Faiz knew that she was verifying that for all 168 hours of each week she had (a) provided staff coverage, (b) paid wages for staff coverage, and (c) retained documents proving payment of wages for staff coverage.  (See Exhibits 20, 29, 38, 39, 40, 43, 44 & 70; Defendant's trial testimony regarding knowledge of exhibits.)

36.   Based upon the verified monthly invoices she submitted, Defendant Zareen Faiz was paid by the Regional Center of Orange County an established monthly rate for each disabled resident who resided at the Ruth Place facility between April 3, 2006, and July 25, 2008.  (See Exhibit 70.)

37.   Between April 3, 2006, and July 25, 2008, the Regional Center of Orange County paid Defendant Zareen Faiz for (among other time periods) (a) caregiver staff coverage from 10:00 p.m. to 6:00 a.m. each day, and (b) Defendant's payment of wages for caregiver staff coverage from 10:00 p.m. to 6:00 a.m. each day.  (Faiz deposition, page 41, lines 18-21; Exhibits 20, 29, 38, 39, 40, 43, 44 & 70.) The Court rejects as not credible Defendant's trial testimony (which contradicted her previous deposition testimony) regarding

the necessity of caregiver staff coverage from 10:00 p.m. to 6:00 a.m.

38.     The funds Defendant received from the Regional Center of Orange County were state and federal funds.  (Exhibits 29 & 70; Testimony of Defendant Zareen Faiz.)

39.     Between April 3, 2006, and July 25, 2008, applying the minimum wage and minimum overtime rates specified in the Fair Labor Standards Act to the hours worked by Plaintiff as established by testimony and documentary evidence, Plaintiff earned no less than $85,451.80.  (Exhibit 66; Testimony of Plaintiff Mario Ferrer and Lolita Fernando.)

40.     Between April 3, 2006, and July 25, 2008, Plaintiff was paid the total gross amount of $33,600.00.  (See Exhibit 67.)

41.     The Court rejects as not credible, and not supported by competent evidence, Defendant's trial testimony that there was an agreement that Plaintiff would be charged for the value of room and board.

42.     The food eaten by Plaintiff and his son during Plaintiff's employment was purchased by Plaintiff Mario Ferrer.  (Testimony of Plaintiff Mario Ferrer.)

In reaching the above factual findings, the Court finds that, to the extent Defendant's testimony conflicted with Plaintiff's evidence, her testimony was not credible.  In reaching that conclusion, the Court notes that there were multiple occasions when Defendant's testimony at trial contradicted, without excuse or explanation, her previous deposition testimony.  In addition, Defendant's testimony was in a number of instances clearly contradicted by exhibits admitted into evidence.

C.    **Factual Findings Pertinent to Employer Identity**

43.     The license to operate the Ruth Place facility was, at all times relevant to this action, held by Dr. Faiz in her individual capacity.

-9-

1     (See Exhibits 28 & 32.)

2     44.   Defendant Zareen Faiz was, at all times relevant to this action, the

3           only one authorized to operate the Ruth Place facility.  (Testimony

4           of Defendant Zareen Faiz.)

5     45.   Defendant Zareen Faiz is the owner of Spring House Care, Inc., the

6           sole member of the corporation's board of directors and the only

7           chief executive officer the corporation has ever had.  (Testimony of

8           Defendant Zareen Faiz.)

9     46.   Spring House Care, Inc. has no secretary or treasurer.  (Testimony

10          of Defendant Zareen Faiz.)

11    D.    **Factual Findings Pertinent to Liquidated Damages**

12    47.   Between April 3, 2006, and July 25, 2008, Defendant Zareen Faiz

13          subjectively believed that Plaintiff was working and entitled to

14          compensation for no less than 55 hours each week.  (Defendant's

15          trial testimony, admissions contained within Defendant's

16          memorandum of contentions and admitted by defense counsel.)

17    48.   Between April 3, 2006, and July 25, 2008, Defendant Zareen Faiz

18          paid Plaintiff a salary the weekly equivalent of which was less than

19          the minimum amount legally required under the Fair Labor

20          Standards Act for a 55 hour work week.  (Exhibit 67.)

21    49.   Defendant's failure to compensate Plaintiff for the 55 weekly

22          hours she admitted she knew he was working was not subjectively

23          in good faith.  (Defendant's trial testimony, admissions contained

24          within Defendant's memorandum of contentions and admitted by

25          defense counsel.)

26    50.   Between April 3, 2006, and July 25, 2008, Defendant Zareen Faiz

27          subjectively believed she was receiving payment from the

28          Regional Center of Orange County to compensate a caregiver for

remaining present on-duty at the Ruth Place facility between 10:00 p.m. to 6:00 a.m. each day and that she was legally was required to compensate a caregiver for remaining present on duty at the facility every day from 10:00 p.m. to 6:00 a.m. (Exhibits 19-22 & 24-26; 38-40, 42-45 & 49; and Defendant's testimony confirming her knowledge of such documents.)

51. Between April 3, 2006, and July 25, 2008, Defendant Zareen Faiz subjectively believed that Plaintiff Mario Ferrer was the caregiver on duty at the Ruth Place facility between 10:00 p.m. and 6:00 a.m. at least 5 days each week. (Exhibits 19-22 & 24-26; 38-40, 42-45 & 49; and Defendant's testimony confirming her knowledge of such documents.)

52. Between April 3, 2006, and July 25, 2008, Defendant Zareen Faiz subjectively believed she was in violation of wage and hour laws for not compensating Plaintiff Mario Ferrer for no less than 95 hours each week for remaining present and on duty at the Ruth Place facility. (Exhibits 19-22 & 24-26; 38-40, 42-45 & 49; and Defendant's testimony confirming her knowledge of such documents.)

53. Defendant's failure to pay sums she believed were owing was deliberate, objectively unreasonable and committed in bad faith. (Exhibits 19-22 & 24-26; 38-40, 42-45 & 49; and Defendant's testimony confirming her knowledge of such documents.)

54. The repeated and material inconsistencies between Defendant's trial testimony and deposition testimony demonstrates Defendant's subjective belief in her own liability and a corresponding bad faith attempt to evade responsibility for a legal liability to Plaintiff that she believes to exist.

II.   **CONCLUSIONS OF LAW**

    A.   **Interstate Commerce Requirement**

*Legal Standards*

Section 203(s) of Title 29 of the United States Code extends coverage of the Fair Labor Standards Act to residential care facilities.  It provides in pertinent part:

> "'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise that . . . is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises . . . ."

*Conclusions of Law*

    1.   The interstate commerce requirement for coverage of the Fair Labor Standards Act was established.

    B.   **Hours Worked, Wages Earned and Wages Paid**

*Legal Standards*

Under the Fair Labor Standards Act, an employee is considered working (and thus entitled to payment) unless he is notified in advance and unconditionally allowed to leave the work premises.  (See Sections 778.223 and 785.16 of Title 29 of the Code of Federal Regulations.)  Since compensable time includes all the time an employee is not allowed to leave the work premises unconditionally, compensable time can include time spent sleeping.  (See Section 785.21, Title 29, Code of Federal Regulations.

Where an employee remains at the employer's premises primarily for the benefit of the employer, sleep time is compensable.  (See *Porter v. General Electric Co.*, 208 F.2d 805 (9th Cir. 1953).)  If the employee remains at the site of the employment primarily for his or her own benefit, an agreement to exclude sleep time from compensable hours worked may be enforced under the Fair Labor Standards Act. (See *Rural Rural Fire Protection Co. v. Hepp*, 366 F.2d 355 (9th Cir. 1966).)

In 2006, the federal minimum wage was $5.15 per hour.  (Title 29, United

1  States Code, Section 206.)  The federal minimum wage was increased to $5.85

2  effective July 24, 2007, and increased to $6.55 effective July 24, 2008.  (*Id*.)

3         In addition, for all hours worked in excess of 40 in a single work week, the Fair

4  Labor Standards Act has at all times relevant to this action required payment of no less

5  than 1.5 times the applicable minimum wage.  (Title 29, United States Code, Section

6  207.)

7                                  *Conclusions of Law*

8         2.     Plaintiff met his burden of proving that his compensable time at

9                the Ruth Place facility included (a) all the hours each week

10               between Sunday at 6:00 p.m. and Friday at 6:00 p.m. except the

11               time between 9:00 a.m. and 2:00 p.m. when all the

12               developmentally disabled residents were attending a day program,

13               and (b) the hours each week between 6:00 p.m. on Fridays and

14               6:00 p.m. on Sundays when Plaintiff was not relieved of his duties.

15               (See Exhibit 66.)

16        3.     Plaintiff met his burden of proving the number of hours included in

17               the above categories on the basis of his testimony and time records.

18               (Exhibit 66.)

19        4.     Plaintiff was required to have been paid no less than $85,451.80

20               pursuant to the provisions of the Fair Labor Standards Act.

21        5.     Based upon the hours he worked as shown by the time records, the

22               amounts he was paid as shown by the pay records, Plaintiff is

23               owed unpaid wages in the amount of $51,851.80.

24        6.     Defendant violated the Fair Labor Standards Act by failing to pay

25               minimum wage and overtime compensation required by law.

26        7.     The Court finds an insufficient showing was made to permit the

27               recovery of payment of wages for Plaintiff's training period which

28               occurred before April 3, 2006.

1

### C.   **Employer Identity**

Under the Fair Labor Standards Act, an "employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee.  (See 29 U.S.C. 203(d).)  Individuals with operational control of a corporation are employers within the meaning of the Fair Labor Standards Act.  (See *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994).)  Similarly, individuals with financial control of the employment relationship are employers within the meaning of the Fair Labor Standards Act.  (See *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999).)

*Conclusions of Law*

8.   The Court concludes that Defendant Zareen Faiz was an "employer" of Plaintiff within the meaning of the Fair Labor Standards Act and thus liable for all sums found to be owing in this action.

### D.   **Liquidated Damages**

*Legal Standards*

Under the Fair Labor Standards Act, an employer may be held liable for liquidated damages in an amount equal to any unpaid minimum wage and overtime compensation.  (See 29 U. S. C. § 216(b).)

Liquidated damages must be awarded if a violation of the Fair Labor Standards Act is found unless the employer proves it acted in subjective good faith and had objectively reasonable grounds to believe its acts or omissions did not violate the law. (See *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003).)  To carry its burden, the employer must present "plain and substantial evidence" showing it took affirmative steps to ascertain the law's requirements, but nonetheless violated its provisions. (*Martin v. Cooper Electric Supply Co.* (3rd Cir. 1991) 940 F.2d 896.)  If the employer fails to carry its burden, liquidated damages are mandatory.  (See *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003).)

28

*Legal Conclusions*

9. Defendant Zareen Faiz did not have a good faith or reasonable grounds to believe her wage and hour practices with respect to Plaintiff did not violate the law.

10. Defendant Zareen Faiz did not take reasonable affirmative steps to ascertain the requirements of the Fair Labor Standards Act.

11. Defendant Zarren Faiz wilfully and intentionally failed to comply with the provisions of the Fair Labor Standards Act with respect to the employment of Plaintiff Mario Ferrer.

12. Plaintiff Mario Ferrer is entitled to recover liquidated damages in the amount of $51,851.80.

E. **Prejudgment Interest**

*Legal Standards*

Prejudgment interest is recoverable under the Fair Labor Standards Act. *(Ford v. Alfaro* (9th Cir. 1991) 785 F.2d 835.) Prejudgment interest accrues on unpaid sums each and every pay day. (*Biggs v. Wilson* (9th Cir. 1992) 1 F.3d 1537.) The Court has discretion to use the prejudgment interest rate specified under California law. *(Equal Employment Opportunity Commission v. Liggett & Myers Inc.* (4th Cir. 1982) 690 F.2d 1072.) The applicable prejudgment interest rate under California law is 7% per annum. (*Los Angeles National Bank v. Bank of Canton* (1995) 31 Cal.App.4th 726, 37 Cal.Rptr.2d 389.)

*Conclusions of Law*

13. Defendant Zareen Faiz is liable to Plaintiff Mario Ferrer for prejudgment interest at the annual rate of 7% (simple interest) on the $51,851.80 in unpaid wages she owes Plaintiff Mario Ferrer.

14. Defendant Zareen Faiz is liable to Plaintiff for prejudgment interest in an amount no less than $4,552.52.

[Proposed} Findings of Fact and Conclusions of Law

1   **F.      Attorney's Fees**

2   *Legal Standards*

3   A Plaintiff who prevails in an action pursuant to the Fair Labor Standards Act is

4   entitled to recover attorney's fees.  (See 29 U.S.C. Section 216(b).)

5   *Conclusions of Law*

6   15.      Plaintiff is entitled to an award of attorney's fees based upon a

7   motion to be filed after entry of judgment.

8

9

10   DATED: <u>October 27, 2009</u>

11   THE HONORABLE VALERIE BAKER
     FAIRBANK, UNITED STATES DISTRICT
12   JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Proposed} Findings of Fact and Conclusions of Law